UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSE R. TORRES,

        Plaintiff,

v.

UNKNOWN SCHAFER et al.,

        Defendants.
_____/

Case No. 1:20-cv-257

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Ward, Miller, and Becher.

## Discussion

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Michigan. The events

about which he complains occurred at that facility.  Plaintiff sues DRF Prison Counselors Unknown Schafer, Unknown Ward, and Unknown Miller; DRF Unit Officers Unknown Sutten and Unknown McAlvey; DRF Front Desk Officer Unknown Wright; and DRF Grievance Coordinator Lisa Becher.

Between Plaintiff's allegations and the attached exhibits, his complaint spans roughly four months, from July through October of 2019.  Plaintiff alleges that during that period Defendant Becher maliciously rejected or otherwise failed to process many of his grievances.  It is very apparent that Plaintiff files a lot of grievances; he attaches many of them to his complaint as exhibits.

He contends the rest of the Defendants have violated his First Amendment rights by retaliating against him for filing grievances and lawsuits.  Plaintiff also alleges that Defendants Miller and Ward violated Plaintiff's First Amendment right to access the courts by refusing to notarize and/or mail out a 42 U.S.C. § 1983 lawsuit Plaintiff intended to file.

Plaintiff seeks compensatory and punitive damages exceeding $1,500,000.00.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**III.     Defendants Ward and Miller**

The events in Plaintiff's complaint are founded upon a dispute between Plaintiff and Defendant Ward. On August 22, 2019, Plaintiff attempted to get Defendant Ward to notarize a lawsuit and then mail it out. (Comp., ECF No. 1, PageID.5.) Ward informed Plaintiff that he did not have a notary seal. (*Id.*) Plaintiff asked permission to see Defendant Miller and have Miller notarize the lawsuit. Miller worked in a different unit. (*Id.*) Ward said he would not help Plaintiff or get involved in Plaintiff suing Ward's co-workers. (*Id.*) Plaintiff claimed his lawsuit was against MDOC staff from a different prison. (*Id.*) Nonetheless, thereafter, another prisoner

3

informed Plaintiff that Miller had told the other prisoner that Defendant Ward had instructed Miller not to notarize Plaintiff's papers because Ward and Plaintiff had "just got into it." (*Id.*; Exh. B, ECF No. 1-2, PageID.33.)

### A. First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

"[P]rotected conduct . . . encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). Therefore, Plaintiff was engaged in protected conduct. Moreover, Ward's statement that he would not help Plaintiff sue suggests that whatever action Ward took was motivated by Plaintiff's proposed lawsuit. Therefore, at least with regard to Defendant Ward, the third element is properly alleged as well.

Plaintiff's allegations against Ward fall short, however, with regard to the alleged "adverse action." Refusing to notarize an affidavit, or to release Plaintiff to another unit so that someone else could notarize an affidavit, is not so harsh a response that it would likely "deter a person of ordinary firmness" from filing lawsuits. In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v.*

4

*Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus* 175 F.3d at 398-99 (citing *Bart*, 677 F.2d at 625). This Court has previously described a refusal to notarize a document as "simply a *de minimis* inconvenience." *Holly v. Nichols*, No. 1:14-cv-1301, 2015 WL 1211529, at *5 (W.D. Mich. Mar. 17, 2015). The Sixth Circuit has similarly concluded that refusal to notarize an affidavit must carry some prejudice before it can support a retaliation claim. *Mayfield-El v. Schotty*, No. 97-1937, 1998 WL 894719, at *2 (6th Cir. Dec. 14, 1998). "Since 1976, affidavits no longer need to be notarized and will be admissible if they are made under penalties of perjury; only unsworn affidavits will be rejected." Arthur R. Miller, Mary K. Kane, 10B *Federal Practice & Procedure* § 2738 at 363 (3d ed. 1998); 28 U.S.C. § 1746 (permitting the submission of a verified statement under penalty of perjury in place of notarized affidavit). As a result, a refusal to notarize a document cannot cause injury to a prisoner and thus would not deter such person from exercising his rights. Because Plaintiff has failed to allege facts that would support the inference that the refusal to notarize an affidavit is anything more than a minor inconvenience here, Plaintiff has failed to state retaliation claims against Defendants Ward and Miller.

Additionally, with respect to Defendant Miller, Plaintiff's claim also fails because he has not alleged that Miller acted—or refused to act—with a retaliatory motive. Plaintiff alleges only that Miller refused to notarize Plaintiff's affidavit because Ward told him not to. Plaintiff's facts do not permit the inference that Miller's actions were retaliatory.

**B.    Access to the courts**

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of

legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff alleges only that he wanted to file a § 1983 claim against prison officials from another prison. He fails to allege actual injury resulting from the refusals of Ward and Miller to notarize his affidavit. Indeed, as previously discussed, since notarization is no longer required, *see* 28 U.S.C. § 1746, the refusal to notarize cannot have caused actual injury. Accordingly, he has failed to state an "access to the courts" claim against them.

### IV.     Defendant Becher

Plaintiff sues Defendant Becher for violating Plaintiff's due process rights when she maliciously rejected or refused to process several grievances. Construed liberally, Plaintiff's allegations suggest that Plaintiff intends to allege that Becher's grievance rejections or refusals to process grievances have interfered with his First Amendment right to petition the government for redress and the right of access to the courts.

The First Amendment stops the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress. *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979). In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). The First Amendment protects Apple's right to petition, but

7

> his suit is founded completely on a mistaken reading of that Amendment. A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials."). Thus, Plaintiff has a First Amendment right to file grievances against prison officials, *Herron v. Harrison*, 203 F. 3d 410,415 (6th Cir. 2000), but the amendment does not require the government to consider, respond to, or grant relief on that grievance.

Plaintiff's allegations reveal that he is trying to expand his right to petition for redress—to complain about prison officials—into a right to compel those officials to listen, or at least to follow their own procedures. The protections afforded by the right to petition are not that broad. It is a right of expression, not a right to process following the expression. "[A] state has no federal due process obligation to follow all of its own grievance procedures . . . ." *Carlton v. Jondreau*, 76 F. App's 642, 644 (6th Cir. 2003). An inmate does not have a constitutionally protected interest in a jail or prison grievance procedure or the right to an effective procedure. *Walker v. Michigan Dep't of Corrections*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355;

*Bounds*, 430 U.S. at 821-24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

Finally, it does not appear that Plaintiff intended to file a First Amendment retaliation claim against Defendant Becher. *See, e.g.,* § III A, above. For example, he does not allege that she acted with a retaliatory motive. If Plaintiff was trying to state such a claim, he failed. Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4 (W.D. Mich. May 29, 2019) (citing cases); *Ross v. Westchester Cty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a single grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim).

Accordingly, Plaintiff has failed to state a claim against Defendant Becher.

## V. Defendant Schafer

Plaintiff contends that Defendant Schafer retaliated against Plaintiff by generally harassing him from August 22 to September 6, 2019. Plaintiff suggests that he engaged in protected conduct of which Schafer was aware, including the proposed lawsuit and many grievances Plaintiff filed against Schafer. Indeed, based on the allegations in Plaintiff's complaint, it appears that Plaintiff filed a grievance against Defendant Schafer after each interaction between them. Plaintiff has adequately alleged protected conduct.

Plaintiff has also alleged adverse action. Most of Plaintiff's allegations reflect petty verbal harassment—suggesting Plaintiff was a woman or a "piece of shit"—or vague threats—"I'm going to make your life a living hell." (Compl., ECF No. 1, PageID.5-11.) The Sixth Circuit has never said that verbal abuse is sufficient to demonstrate adverse action. *Taylor v. City of Falmouth*, 187 F. App'x 596, 600 (6th Cir. 2006); *see also Carney v. Craven,* 40 F. App'x 48, 50 (6th Cir. 2002) ("Even if the grievance was not frivolous, he did not state a claim for retaliation in the form of verbal harassment. An inmate has no right to be free from verbal abuse . . . and minor threats do not rise to the level of a constitutional violation."); *Hilton v. Mish*, 224 F. Supp. 3d 595, 603 (W.D. Mich. 2016) ("[V]erbal abuse, foul language, and insensitive comments made to or about a plaintiff generally do not constitute adverse action.").

But, Plaintiff's allegations also include specific threats to place a knife in Plaintiff's area of control and writing a false misconduct. Between these more serious actions and the entire pattern of behavior, the Court concludes that Plaintiff has adequately alleged adverse action.

Finally, Plaintiff has adequately alleged that Schafer acted with a retaliatory motive. Accordingly, Plaintiff has stated a First Amendment retaliation claim against Defendant Schafer.

### VI.    Defendant Sutten

Plaintiff alleges that Defendant Sutten retaliated against Plaintiff because Plaintiff convinced his family members to file complaints against Schafer and Ward. The retaliation occurred between August 26 and September 1, 2019. After the retaliation started, Plaintiff grieved Sutten, which, according to Plaintiff, prompted additional rounds of retaliation. Plaintiff has adequately alleged protected conduct.

Plaintiff contends that Sutten's adverse action took the form of repeated verbal harassment and one shakedown that resulted in a misconduct ticket for contraband. Plaintiff suggests the misconduct ticket was false, but Sutten principally charged that Plaintiff possessed contraband. (Misconduct Hr'g Rep., ECF No. 1-11, PageID.71.) That charge was sustained and Plaintiff does not dispute it. Additional charges that the contraband included forged or stolen property were rejected. (*Id.*) A JP5 tablet was confiscated because it included a "sexually explicit" photo of a bikini-clad woman. (*Id.*) It was returned because the photos were not "nudes." (*Id.*)

In *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011), the court concluded that a course of conduct over time might constitute "adverse action." The court reasoned:

> Here, Reynolds-Bey alleges that Kingsbury searched him (either once or twice in quick succession) and used a racial slur and a thinly-veiled threat in retaliation for Reynolds-Bey's protected conduct. Although this is a close issue, we find that the alleged events could constitute action sufficient to deter a prisoner of ordinary firmness from engaging in protected activities in the future. A single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard. *See Tate*, 85 F. App'x at 417. Here, however, Reynolds-Bey further asserts that Kingsbury "use[d] . . . racial threats to advocate physical violence." (Pro Se Appellant Br. 9.) Although the alleged threats of violence or other retaliation were not explicit, the words Reynolds-Bey attributes to Kingsbury can be construed as an implicit, and nontrivial, threat. First, the use of racial slurs by an individual in a position of authority is repugnant and often carries with it an implicit threat of violence. *Cf. Ward v. Washington Mut.*, No. 03 C 3566, 2004 WL 2534628, at *3 (N.D. Ill. Sept. 30, 2004) (in workplace racial discrimination claim,

> noting that the use of "odious [racial] epithets . . . reasonably could have conjured up disturbing episodes from our society's checkered history of inter-racial relations"). Second, Kingsbury's alleged statements that Reynolds–Bey "will always stay on my list" (Am. Compl. ¶ 27) and that "Reynolds was the one" (Grievance No. OTF-04-06-0361-18B), as well as his purported reference to the district court decision mentioning Kingsbury (Am. Compl. ¶57(b)), could reasonably be interpreted by a person of ordinary firmness as a serious threat-particularly when coupled with the dining hall searches.

*Reynolds-Bey*, 428 F. App'x at 503-04. Although Sutten's actions were not as egregious as Kingsbury's, it appears that Sutten's actions might also have been interpreted as a serious threat and, therefore, at least for purposes of this preliminary review, might suffice as adverse actions to support a retaliation claim. Moreover, Plaintiff has adequately alleged that Sutten's actions were motivated by Plaintiff's protected conduct. Accordingly, the Court concludes that Plaintiff has adequately stated a First Amendment retaliation claim against Defendant Sutten.

## VII. Defendant McAlvey

Plaintiff alleges that Defendant McAlvey harassed him on August 26 and 27, 2019. Plaintiff has adequately alleged protected conduct, adverse action—specifically the threat that Plaintiff would end up with a shank and a case (Compl., ECF No. 1, PageID.14.),[1]—and a retaliatory motive. Accordingly, Plaintiff had adequately stated a First Amendment retaliation claim against Defendant McAlvey.

## VIII. Defendant Wright

Plaintiff claims Defendant Wright, on September 18, 2019, broke Plaintiff's typewriter when Wright confiscated it. Plaintiff alleges that when Wright took the typewriter he stated: "Let's see if you can file more grievances and lawsuit[s] without it." (Compl., ECF No. 1, PageID.15.) The Court concludes that Plaintiff has sufficiently alleged protected conduct,

---

[1] Plaintiff's allegations that McAlvey "watch[ed] Plaintiff['s] every move" and discouraged another prisoner from talking to Plaintiff, however, do not rise to the level of adverse action.

adverse action, and a retaliatory motive. Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Wright may proceed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Becher, Ward, and Miller will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against Defendants Schafer, Sutten, McAlvey, and Wright remain in the case.

An order consistent with this opinion will be entered.

Dated:   April 14, 2020                                    /s/ Janet T. Neff
                                                          Janet T. Neff
                                                          United States District Judge